John Fitz Miller and another, Syndics of the creditors of said Miller, v. Antoine Michoud and another.

*Property not subject to alienation cannot be mortgaged. C. C. 3256.*

*Where a lessee of ground constructs buildings or other works thereon, with his own materials, the owner of the soil may keep them on paying the value of the materials and the price of the workmanship. C. C. 497, 498, 500. The lessee having only the right, at the expiration of the lease, to claim the value of the materials and the price of the workmanship, such buildings or works can neither be alienated nor mortgaged by him. He may alienate his right to claim compensation, or to take the buildings away ; but such a right is not susceptible of being mortgaged. So where, by the terms of the lease, any buildings erected by the lessee are to become the property of the lessor at its expiration, without his being bound to pay any compensation therefor, the lessee has only a mere moveable right of possession and enjoyment, incapable of being mortgaged.*

Appeal from the District Court of the First District, *Buchanan,* J.

*Lockett* and *Micou,* for the plaintiffs and appellees.

*Roselius* and *Soulé,* for the appellants.

Simon, J. This case presents the following facts: On the 9th of May, 1829, an authentic act was executed by which the late Nicholas Girod agreed to lease to John F. Miller, for the term of twenty years, a certain lot of ground, situated in the faubourg St. Mary, being the square bounded by New Leveé, Girod, Tchoupitoulas and Notre Dame streets, for the annual rent of $3000 ; and it is therein stipulated that, at the expiration of the lease, (9th of May, 1849,) " *Ledit sieur Girod, et ses héritiers ou ayans cause rentreront dans la possession et jouissance du dit lot de terre et des édifices y construits; et à cette èpoque, toutes les batisses et améliorations, de quelque nature qu'elles soient qui éxisteront sur le dit*

29

*lot de terre deviendront la propriété incommutable du dit sieur Girod et ses héritiers, sans aucune compensation pour les dites batisses, &c.*" Miller, however, does not obligate himself to erect any building on the property during the continuance of the lease. The contract contains also the following clause : " *Et dans le cas où la dite rente ou loyer de $3000 ne seroit pas régulièrement payé le neuf Mai de chaque année à compter de neuf Mai, 1830, alors le sieur bailleur aura le droit de vendre, ou de faire vendre pour effectuer le dit payement, telle portion des batisses qui aura été désignée par le preneur, pourvu qu'elle soit d'une valeur suffisante pour satisfaire la somme ainsi due par le preneur; le dite sieur Miller consentant que le present acte emporte avec lui exécution parée et soit revêtu de toute la force d'un jugement en dernier ressort.*" Thus we understand from this contract that, at the end of twenty years, the landlord is to re-take the possession and enjoyment of the premises and of the buildings erected thereon, and that, at that time, all such buildings are to become his property, without his being bound to compensate the lessee for the value of the improvements.

The lessee took possession of the lot under the lease, and erected thereon eight two story brick buildings fronting on Girod street. On the 2d of November, 1840, he sold one undivided half of his interest in the lease and buildings to a third person, subject to the rights of several under tenants, and with the benefit of any buildings and improvements erected thereon by the latter ; and, at other periods, executed mortgages on the other half, in favor of Samuel H. Turner, to secure the payment of $7,592 74, with interest, and of Joseph Fowler to secure the payment of $10,000, with the same interest.

The lessee made a surrender of his property to his creditors, and, on the 6th of June, 1842, his undivided half of the eight brick houses and lease was sold by his syndics at public auction, and adjudicated to the executors of the lessor for the sum of $11,200 cash. The executors pretended that the price of the adjudication should be compensated by a claim against the insolvent's estate, due to Girod's succession, for arrears of rent and taxes, amounting to upwards of $17,000, on their giving bond and security to contribute to the payment of debts having a preference

over them. This was refused by the lessee's syndics, and objected to by the mortgage creditors. The syndics retained possesion of the premises, and a suit was brought by them against the lessor's executors for the amount of the adjudication. The, syndics subsequently filed a tableau of distribution, which was opposed by the executors, on the ground that their claim was superior to that of the pretended mortgage creditors. The suit and the opposition were, by consent of parties, consolidated; and, after a full investigation of the respective rights of the parties under the lease and acts of mortgage, the judge *a quo* decided that the executors' claim for rent and taxes should have the preference over the pretended mortgage debts claimed by Turner and Fowler, to be paid out of the proceeds of the sale of the premises leased and of the moneys collected and to be collected of under tenants, and ordered the executors to be put in possession of the property; and from this judgment, the mortgage creditors and the syndics have appealed.

From the facts above stated, and the pleadings of the parties, it appears that the objection made by the syndics to allow the compensation claimed by the executors, is founded on the pretence that the premises, or their proceeds are not subject to the privilege on which the right of compensation is based; and that the mortgage creditors ought to have the preference on said proceeds. Hence the first question which presents itself for our consideration and solution, is, whether the right of the lessee to the buildings and lease, was susceptible of being mortgaged?

That is a question of considerable importance, and although, from the stipulations contained in the contract of lease, the parties thereto may appear to stand towards each other in a peculiar situation, in relation to the property upon which third persons pretend to have acquired subsequent rights, we shall first examine it according to the general principles of law which may govern a case of this nature, without the stipulation upon which the appellees rely.

It will be conceded that under art. 3256 of our Civil Code, the following objects *alone* are susceptible of mortgage : 1st. *Immovables subject to alienation*, and their accessories considered likewise as immovables. 2d. The usufruct of the same descrip-

tion of property, with its accessories. 3d. Slaves. And 4th.
Ships and other vessels. Thus it is clear that, if the property on
which the right of mortgage is pretended to exist, is not subject
to alienation, it cannot be mortgaged. Here the parties stand
towards each other in the relation of landlord and tenant. On
the one hand, the landlord has the *dominium directum*, and the
tenant, on the other hand, has the *dominium utile* of the premises.
This *dominium utile*, which is nothing but the right to enjoy and
possess the property, cannot be mortgaged, unless it come within
the second denomination of the objects susceptible of being
mortgaged, to wit, the usufruct of immovable property; but
the right to mortgage does not extend further than the usufruct
itself, and it has no application to any other property to which
the mortgagor has no direct title, or has only a precarious one.
So, if the lot which was leased in this case to the insolvent, had
never been improved, it is obvious that he could never have
granted any mortgage upon it, although, under the lease, he
might be said to have the *dominium utile*. The ownership of the
lot, or of the soil, was in the lessor, and by him alone could it be
alienated, and consequently mortgaged. Duranton, Vol. 19,
No. 266, says: " *Quoique les droits d'usage et d'habitation ré-
sident sur des immeubles, et qu'ils aient beaucoup d'affinité avec le
droit d'usufruit, néamoins ils ne sont pas susceptible d'hypothèque,*" &c.
So should it be with regard to the rights resulting from a lease
of immovable property, although the lease itself may be sold
or transferred.

Now it is one of the well known principles of our laws, that
" *the property of the soil carries with it the property of all that which
is directly above and under it*" (C. C. art. 497) ; that all the con-
structions, plantations and works, made on or within the soil, are
supposed to be done by the owner and to belong to him, unless
the contrary be proved (art. 498) ; and that although such
constructions and works have been made by a third person, with
his own materials, the owner of the soil has a right to keep
them, and they are acquired by him by virtue of the right of ac-
cession, on reimbursing to the owner of the materials, their
value and the price of workmanship, without any regard to the
greater or less value which the soil may have acquired thereby.

Civil Code, art. 500. Under these principles, is it not obvious that, if a lessee of a naked lot erect houses upon it with his own materials, the buildings, presumed to belong to the owner of the soil, would only give him, the lessee, the right, at the expiration of the lease, to claim of the lessor the value of the materials and the price of the workmanship? The buildings would be his only in this sense, that he would have the *dominium utile* of the whole premises during the lease, and would be entitled to a legal compensation for the improvements from the owner of the soil at its expiration. But as he could not deprive the owner of the right given him by art. 500, above quoted; as he would be bound to consider the buildings as belonging to the lessor, subject only to the said compensation, how could he alienate them? What title to the said buildings could he transfer to another? The same kind of title which he has, to wit, the right of claiming the compensation or of taking the buildings away, if the owner did not choose to keep them ; and surely this kind of right is not susceptible of being mortgaged.

Art. 455 of our Code, referred to by the appellants' counsel, says that buildings, or other constructions, whether they have their foundations in the soil or not, are immovable by their nature. This is true, but they are immovable only in relation to the soil, with regard to the owner of the soil; but not in relation to the owner of the materials with which they have been erected. We have just now demonstrated the extent of the right of the latter ; they are mere moveable rights, subject to be exercised at the option of the owner of the soil, and, if the buildings are to be taken away, they become moveables, after being detached from the soil ; until then, however, they are immovables, as being a part of the estate composed of the soil and of the improvements, and may be mortgaged by the owner of such estate. Duranton, Vol. 19, No. 258.

Under the French laws it is well settled, that a right of emphytéoses (unknown to our laws,) a *bail emphytéotique*, is susceptible of being mortgaged. Duranton, Vol. 19, No. 268. Troplong, Hypoth, Vol. 2. No. 405. But this is peculiar to the French legislation, and is governed by special laws upon the subject. In contradistinction, however, with the right of mort-

gaging property held under a *bail emphytéotique*, it has been decided by the court of Cassation, that: " *Il ne suffit pas qu'un bail soit à longues années pourqu'il puisse être considéré comme emphytéotique. Ainsi celui qui sur un terrain pris à ferme pour 27 ans, a élevé des constructions en vertu d'une clause du contrat, n'a sur les constructions qu'un droit de jouissance mobilière par sa nature, et par conséquent non susceptible d'hypothéque.*" This opinion had been entertained by the royal court of Paris, whose judgment was reviewed by the supreme tribunal. Dalloz, Jurisprudence du XIX Siècle, vol. 19, p. 61, *Verbo* Louage, sect. IV. And it seems from the case itself, which we have examined, that it has the greatest analogy with the one under consideration. See also Troplong, Contrat de Louage, on art. 1709 of the French Code, from which our art. 2644 was borrowed. No. 19, *et seq* Thus, it is well settled in France, under a similar system, that if a lessee has erected buildings on the soil leased, by virtue of a clause in the contract, his right on such buildings is limited to a mere moveable right of enjoyment, and is not susceptible of mortgage; and we think that under our laws, a similar doctrine can safely be adopted.

But, by the very terms of the contract in this case, no doubt can be entertained, as to the intention of the parties, that the lessor should be considered as the owner of the improvements; he is to have, at the expiration of the lease, the possession and enjoyment of the lot and buildings; they are to become *his property*, without his being bound to pay any compensation; this last clause was inserted in the act undoubtedly to avoid the exercise of the lessee's right, under art. 500 of our Code, by which the latter would be entitled to claim a compensation; and we do not hesitate to decide, that the lessee, having nothing but a mere moveable right of possession and enjoyment of the premises, resulting from the contract itself, and even from the law, he could not validly mortgage them. They were not his absolute property, and he had no right to alienate them.

From this view of the question it results, that the appellants, Turner and Flower, are not mortgage creditors of the insolvent; that they are mere ordinary creditors; and that they have no right, as such, to dispute the application or imputation of the

proceeds of the sale of the leased premises to the satisfaction of the rent due to the lessor, under the stipulations of the contract, from which it is clear that such rent as should not be punctually paid, should be discharged out of the proceeds of the sale of a portion of the buildings. It is equally clear that, under art. 2676 of our Code, the right of pledge, or privilege, allowed by law in favor of the lessor, also extends to the sums collected or to be collected from under tenants, and even to the effects of the latter, so far as they are, or may be indebted to the principal lessee; and that, therefore, the syndics have no right to dispute it. As to the lessee, or his syndics, there was no necessity to record the lease.

In relation to the liquidation of the appellees' claim for rent and taxes against the estate of the insolvent, we think that as to the amount of rent due, the liquidation is correct. It was admitted on the trial that the rent from 1839 to 1841 was settled by notes, amounting together to $6,150; that the syndics are yet (on the day of the trial, which took place in July, 1844,) in possession of the premises, and that there is an agreement for the collection of the rents; and the record shows sufficiently that, the syndics having refused to deliver possession of the property to the executors, they, said syndics, kept the control and possession of it, so as to continue to collect the whole of the rents from the under tenants. This makes them responsible for the whole rent to the appellees, and three years thereof ($9000 to the 9th of May, 1844,) was properly allowed below.

With regard to the reimbursement of the claim for taxes, we think it has been fairly and justly liquidated. The contract contains a clause in which it is stipulated that: " *Les taxes d'état et de paroisse sur le dit lot, de terre susdécrit seront payées par M. Girod ou ayans cause; 'les dites-taxes sur les batisses qui seront construites sur le dite lot terre seront payées par le dit sieur Miller ou ayans cause.*" Girod, and, since his death, his executors have always paid the whole of the taxes, while Miller was bound to pay the state and parish taxes due on the buildings; but they were assessed together, and it became necessary below to resort to parol evidence to ascertain the proportion which Miller was to pay for the buildings; and this brings us to the consider-

ation of a bill of exceptions found in the record, from which it appears that, on the executors' introducing witnesses to estimate, according to their knowledge of the facts and of the situation of the premises, the proportion of taxes due by Miller, the evidence was objected to by the appellants' counsel and admitted by the court. This bill, however, has not been insisted on by the counsel in their written arguments, and seems to be abandoned; but had it been urged that the testimony was illegal, our impression is that it was properly admitted. The assessment of the taxes had nothing to do with the contract between the lessor and the lessee, and the want of it cannot be any bar to the recovery of the proportion due by Miller under the contract, on the lessor's showing the extent of said proportion, and the payment of the taxes assessed on the whole property. This was done below, and although, under art. 2672 of the Civil Code, the landlord is bound to pay all taxes, we think, that, according to the peculiar clause contained in the contract, the appellees had a right to claim the reimbursement of the amount established by the evidence, and that such amount has been properly allowed.

In conclusion, we are of opinion that, the claim of the executors, under the contract, not being in conflict with the superior rights of any other creditor of the insolvent, the compensation contended for by the appellees was correctly maintained below; that the amendment to be made to the tableau of distribution filed by the syndics, is fully supported by law and by the evidence; and that the judgment appealed from is in all respects correct.

*Judgment affirmed.*