## No. 5428.

### NEW ORLEANS VS. G. W. CAMPBELL, S. & A. W. SMITH, PLANTIFFS IN RULE.

If the lessee of a naked lot build houses upon it, they belong to the owner of the soil, and the lessee has the *dominium utile* of the whole during the lease, and at its close is entitled to compensation for the houses, but cannot sell them. He can sell only the right he has of use and enjoyment, and of claiming compensation for them, or taking them away at the end of the lease if the owner does not elect to keep them, and this right is not susceptible of mortgage.

Exemption of the property of a charitable institution from taxation is the grace of the State towards an object of beneficence. It cannot be taxed as the property of its lessee, and if the right of such lessee is taxable, the taxes assessed upon it cannot be enforced against it after its voluntary alienation. Such taxes are personal to the lessee, and not exigible from the purchaser of his right.

The prohibition against conveying real estate without prepayment of taxes does not apply to the right of the lessee in such case, since he is not the owner of the soil or buildings, but only of certain rights to be exercised upon them.

APPEAL from the Superior District Court of New Orleans. HAW-KINS, J.

*Blanc*, assistant attorney for the City. *Hornor & Benedict* for Recorder. *Finney & Miller* for the Smiths.

George W. Campbell leased certain vacant lots in New Orleans from the Female Orphan Asylum, and made valuable improvements thereon. The property of the asylum was exempt from taxation, under an act of the Legislature, as a charitable institution. Campbell's lease was for fifty years, and the contract was that he was to build upon the lots at his pleasure, and at the end of the lease the asylum was to pay him the then value of the improvements, to be ascertained by appraisement. He had the right to sub-let, and also to cede or sell his lease to a third person, but not the right to remove his improvements, nor had the asylum the right to require their removal, but was bound to keep and pay for them.

The city obtained judgments against Campbell for taxes. Campbell sold his lease and the improvements upon the lots to the Smiths, after which the tax judgments were recorded. The Smiths took a rule on the recorder of mortgages to cancel the inscriptions of these judgments. After preliminary statement,

EGAN, J. It becomes necessary at the outset to inquire whether property sought to be affected by the tax liens and judicial mort-

ages is subject to mortgage at all, for if not, it is immaterial to inquire further, or to the effect of the registry made in this case.

To do this it is necessary to determine the nature and character of the lessee's rights in the land and improvements made by himself upon it, because it will not be for a moment pretended that the property of the lessor, even if taxable as against him, is in any measure responsible for the taxes assessed against or due by the lessee. In France it has often been held under provisions of law very similar to our own that if a lessee has erected buildings on the soil leased by virtue of a clause in the contract, his right on such building is limited to a mere movable right of enjoyment and is not susceptible of mortgage.

" Il ne suffit pas q'un bail soit a longues années pourqu'il etre considéré comme emphyteotíque. Ainsi celui qui sur un terrain pris á ferme pour 27 ans, a élevé des constructions en vertu d'une clause du contrat, n'a sur les constructions qu'un droit de juissance mobilière par sa nature, et par consequent non susceptible d'hypothéque." Dalloz Jurisprudence, vol. 19, p. 61, sect. 4 verbo Louage. See also Troplong contrat de louage, No. 19, et sequentes, on the same subject.

In the case of Miller *v.* Michaud, 11 Rob. 225, the court say we think, under our laws, a similar doctrine can safely be adopted; again, " If the lessee of a naked lot erect houses upon it with his own materials, the buildings, presumed to belong to the owner of the soil, would only give the lessee the right at the expiration of the lease to claim from the lessor the value of the materials and price of workmanship" (or as we have seen under Art. 2726, a fair value). The buildings would be his (the lessee's) only in this sense, that he would have the *dominium utile* of the whole premises during the lease and be entitled to this compensation at its close, and as he would be bound to consider the buildings as belonging to the owner of the soil, how could he alienate them? What title could he transfer to another? The same kind of title which he has, to wit, the right of claiming compensation or taking the buildings away if the owner did not choose to keep them; and surely this kind of right is not susceptible of being mortgaged. It is immaterial, then, whether the right of Campbell was a mere right of enjoyment, movable in its nature, as considered in 11 R. and in France, or what is termed a real right — it is not immovable — not a usufruct, and not mortgageable. 18 A. 513.

Besides the exemption of the property itself with all the enhancement of value from improvements results in this instance from the grace of the State towards an object of beneficence, a public charity, which it is neither the will, or policy of the law to tax, and we see that exemption conditioned upon the use of the property for the purposes of the Female Orphan Asylum, it can not be said that it is not so, and while it yields a revenue in the shape of the lease price for the support of this charity ; and suppose the claim of the city to tax the lessee on his rights, such as they are, to be correct, and that the full amount claimed as against Campbell is due, it would by no means follow that because her officers have not seized and sold these rights before his voluntary alienation of them, that it operates a hardship in the city not to be able to make another, or the property or rights of another to pay Campbell's debts.

*Judgment reversed and for plaintiffs in rule.*