No. 6574.

JOSEPH LARGUIER vs. J. HAYS WHITE.

The stipulations made by parties in their contracts, are the law to them, and to their assigns under the contracts, except when such stipulations are in contravention of public law, or good morals.

APPEAL from the Fifth Judicial District Court, parish of East Baton Rouge. *Dewing*, J.

*Herron & Bird*, for plaintiff and appellant.

*E. W. Robertson*, for defendant.

The opinion of the court was delivered by

DEBLANC, J. Were we called upon to decide this case according to

the dictates of equity, we would concur in the views of the district judge and affirm his judgment; but to do so without reservation we would have to ignore the terms of the parties' contract, and, however onerous it may be to defendant or partial to plaintiff, that contract is their law.

At Baton Rouge, on the fifth of January, 1871, William Lee leased a plantation from A. Dupuy for the space of five years. He agreed to pay, as the consideration of that lease, eleven hundred dollars in cash and the balance in four installments, represented by four notes, maturing—the first in two, the second in three, the third in four, and the fourth in five years from the fifth of January, 1871.

Dupuy, the lessor, died shortly after the lease had been entered into, leaving as his universal legatee Joseph Larguier, the plaintiff and appellant. On the foot of the act of lease between A. Dupuy and William Lee plaintiff wrote, on the second of January, 1875, the following declaration, to wit: "The above-recorded lease, with the consent of William Lee, is transferred to J. Hays White." In his evidence before the court Lee said: "I believe Mr. White took the paper with that transfer on it." Whether he did or not, he continued to work the plantation, fully aware of the conditions of the lease, which, in his presence and without any objection on his part, had thus been transferred to him. From that date he was as bound by its terms as Lee himself had been.

Was it only from the transfer to him that White was informed of the conditions of the lease? He was on the plantation as one of the partners of Lee from January, 1871, until the end of 1875; he paid three of the rental notes furnished by the first lessee, and it can not be reasonably presumed that he formed a partnership with said lessee and became his transferee without having read the contract, a copy of which he produced on the trial. That contract was recorded on the twentieth of July, 1871, and defendant must, or at least should have, in his own interest, ascertained every stipulation it contains.

Two of those stipulations are too important to have escaped the attention of either the lessee or his transferee. In the language of the act, the first is: "The improvements Mr. Lee will have no right of removing or payment of the same, except the machinery for the improvement of sugar manufacturing." The second is: "That the lessee will have no right to cut wood, except for the improvement of the place and the manufacture of the crop raised on the place." These stipulations and the fact that Lee and his partners took the plantation in the most wretched condition show most conclusively that the improvements and repairs then needed were afterward to be made as a part of the consideration of said lease; except, however, any machinery brought on or attached to the place for the improvement of sugar manufacturing.

In that description, what kind of machinery is included? In his evidence Lee said: "I thought it meant any new machinery, such as a new kind of sulphur machine, or vacuum pan, or anything like that; nothing was said about any other machinery at the time the lease was entered into; that is all that was said." Any machinery answering that description and brought on the place by defendant or his partners may, under that express stipulation, be taken and removed by them, unless it is attached to said place with lime and cement, and plaintiff elects to retain it and pay its value.

The only thing of that description which may be removed by defendant is a sulphur machine valued at three hundred dollars. As to the boilers, the value of which was allowed to defendant, they are, by their peculiar destination, excluded from that description, and can not be classed as machinery used for the improvement of sugar manufacturing. Under the law, and without a stipulation to the contrary, defendant would have been entitled to either the boilers or their value; under the contract he is not. That contract defines and fixes his rights and obligations as the transferee of the lease from Dupuy to Lee.

Are or are not sub-lessees controlled by the contract between the original parties? In a remarkable decision rendered by Mr. Justice Spofford when presiding as a district judge he said: "It is equitable that they should be so controlled when notified of the contents of the original lease; it is legal that they should be so bound, because the lessee can convey no greater rights than he himself possesses. It makes no difference in such matters whether the lease was recorded or not." In this case it was, and White was more than a sub-lessee—he accepted, without any modification, the transfer of the original lease. 10 An. 628.

The lease commented on by Mr. Justice Spofford contained a clause similar in substance to that found in the lease from Dupuy to Lee, and which was transferred to White; it reads as follows: "And whatever improvements the lessees may choose to make, they have the privilege of doing by leaving the same on the premises, free of charge." In regard to that clause what fell from the pen of the learned judge? *Conventio vincet legem;* if not contrary to the law itself, the contract is the law of the parties; and he referred to the case of Miller vs. McCloud, 11 R. 225, in which such a contract has been recognized as legal and binding.

It can not be successfully claimed that as to the intended repairs the lessor was put in default. The evidence on that point is too vague and indefinite to sustain such a pretension, and it was well said by the Supreme Court, in the case of Shull vs. Banks, that the owners of houses would soon be ruined if it were permitted to every tenant to make such repairs as his fancy or caprice might dictate, without notifying the own-

ers as required by law. The wisdom of that decision is illustrated by the defendant's reconventional demand. The lessor's claim is for $1100, the lessee's and his partner's for $4197 36. 8 R. R. 171.

Defendant relies on the fact that most of the repairs, the price of which he considers himself entitled to, were made in 1872, 1873, and 1874, when, he contends, there did not exist between him and plaintiff the relation of lessor and lessee. That fact we construe against him, for he does not explain how it is that, during those years, the rent was paid without any mention of those repairs or of the intention to recover the price of the same. The lessee's and his partner's silence during that long period strengthens the conviction that the reconventional claims, which were never presented to the lessor, were thought of only after defendant was sued or threatened with a suit.

The testimony of Lee is quoted in the brief of appellee's counsel, with a view, we presume, of charging Dupuy with misrepresentation and fraud. Lee said: "At the time of the lease I went around and examined the machinery in the sugar-house and saw that everything was in bad order. I called Dupuy's attention to the condition of the boilers. He remarked that they were nearly as good as new; that they had lately been repaired at the expense of from two to three hundred dollars, and that left me under the impression that they were in good condition. I found out afterward that they were not. Had I known it, I would have made a different arrangement for the boilers."

Where is the misrepresentation and where the fraud? Lee visited the place, examined the machinery, found all in bad order, and, nevertheless, after that visit and that examination, he either fixed the price of the lease or maintained that which had already been fixed. He cultivated the place from 1871 until the end of 1874, never complained, never asked a reduction of the price agreed upon, and, at this late hour, intimates, though he saw and inspected all he leased, that he was deceived by the lessor. If so, why did he not sue for a dissolution of the lease? The suggestion of fraud and misrepresentation on the part of Dupuy is not sustained by the evidence.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court in favor of defendant be annulled, avoided, and reversed, so far as it condemns the plaintiff to pay to said defendant the sum of twelve hundred dollars, with legal interest from judicial demand and costs of suit.

It is further ordered, adjudged, and decreed that, as amended by this specified and limited avoidance, the judgment of the lower court be and it is hereby affirmed, defendant and appellee to pay the costs in both courts.