Ross vs. Zuntz.

No. 8654.

## Jesse W. Ross vs. James E. Zuntz.

The lessee of a sugar plantation has the right to remove all the improvements and additions which he has made thereon, provided he leaves it in the state in which he received it.

If the lessee agrees in the contract of lease that all machinery and fixtures put on the property by him shall remain thereon at the expiration of the lease, he loses his right to remove such improvements, but he does not thereby waive his right to claim compensation therefor. Such compensation is the actual cost of the machinery and fixtures.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe*, J.

*W. S. Benedict* and *Chas. E. Schmidt* for Plaintiff and Appellant.

*Rouse & Grant* and *Kennard, Howe & Prentiss* for Defendant and Appellee.

The opinion of the Court was delivered by

Poché, J.   Plaintiff's object in this suit is to recover the sum of $46,990, in reimbursement and as the value of improvements which he had placed on a sugar plantation owned by the defendant, and which plaintiff had leased from him for a term of seven years.

The defense is a general denial and the averment that plaintiff's claim, if any he ever had for such improvements, had been included in,

and covered by, a settlement of accounts between the parties, in which plaintiff was shown to be in defendant's debt in the sum of $18,276.62, for which the former executed his note at the date of said settlement, on January 20, 1879. Defendant also pleaded the prescription of one and three years.

The original lease, made in writing on the the 18th of January, 1874, was for a term of two years, to commence on the first of that month. The rental was for the sum of $6000 per annum and the payment by the lessee of all taxes, State and parish. The lease contained the usual stipulation, binding the lessee to keep the property in good order and repair, and to return therewith at the expiration of the lease the same number of mules, carts and other implements of agriculture. It was also stipulated in the contract that the plantation was to be under the superintendence, supervision and administration of William Stackhouse, and that the right of general supervision was reserved to the lessor.

At the time that the lease was executed, the lessor was not yet the owner of the plantation, which was then under seizure at his instance for the enforcement of a special mortgage which he held against William Stackhouse and Heywood Stackhouse, who were then the owners of the place.

Hence, the defendant Zuntz bound himself in the act to bid at the sheriff's sale as high as the sum of $50,000 for the plantation, and if adjudicated to him at that price the property became affected with the lease.

But it was specified that in case of a bid by any other party in excess of $50,000, defendant would not purchase and the contract of lease would become null and void. At the sale, Zuntz became the purchaser for $33,000 and the lease went into effect.

A short time before the expiration of the lease, it was renewed between the parties, as shown by the following writing, which was added to the former contract:

"Whereas, the foregoing lease will expire by limitation on the first of January, 1876, now the said parties, lessor and lessee, do hereby extend the said lease for five (5) years from the said date of 1st of January, 1876, for the same price and on the same terms and conditions stipulated in said lease, with the following modifications only: that at the expiration of said lease (1st of January, 1881), the lessee will return to the said lessor the same number of carts and mules, in the same condition and of the same value as when they were received by the lessee,

and all *machinery* and *fixtures* put on property by the lessee to remain thereon at the expiration of the lease; and lessee will, also, at the expiration of the lease, leave on the property sufficient seed cane to plant one hundred and fifty (150) acres.

 (Signed)        "JAMES E. ZUNTS,

              "J. W. ROSS."

"Witness (signed): J. H. ILSLEY."

The trial below resulted in a judgment in favor of defendant, and plaintiff appeals.

The main contention in the case involves the proper construction of that clause in the renewal of the lease under which plaintiff agrees that all machinery and fixtures put on the property by him shall remain thereon at the expiration of the lease.

Adopting the construction urged by defendant's counsel, the district court held that the agreement to leave such machinery and fixtures by the lessee was a part of the consideration of the rental of the property; that such a stipulation became a law to the parties, and that therefore the lessee had debarred himself of the right of claiming compensation for such improvements.

Before expressing our views on this point, we must premise that, under our understanding of plaintiff's demand, his cause of action discloses two separate and distinct claims which should not be, but have unfortunately been, confounded with each other throughout the whole trial in the district court:

1. We have to deal with his claim for the value of the machinery and fixtures, alleged to have been placed by him and left on the plantation, and for which he claims compensation under the stipulation herein above referred to.

2. In the next place, we must dispose of his claim for other improvements, such as the erection of new buildings, repairs of old buildings and general repairs for which he claims compensation under special verbal agreements with the lessor, whom he alleges to have consulted as to the erection of the new buildings and whose consent he avers to have obtained before making the other improvements and repairs, as the same became useful and necessary, and for the payment of which the defendant Zuntz had bound himself according to law.

The record contains ample proof of great outlays of money by the lessee in making numerous and valuable improvements on the plantation during the term of his lease and of the actual cost of the same.

In his testimony, the defendant strenuously denies that his plantation was in the least improved, or its value enhanced, by the radical

changes made in the sugar-house and the extensive additions made to it and to other buildings on the place by the lessee. He contends, on the contrary, that the property was in a better condition and more valuable at the beginning than at the termination of the lease. But in that bold assertion he is not borne out by the record, and much less by his own acts as shown by the evidence and viewed in the light of reason and of human experience.

The value of the plantation at the time of his purchase was, in his own opinion, not more than $50,000. To that amount he restricted his obligation to bid at the sale provoked by himself for the payment of his mortgage claim, which was double that amount. At the termination of his lease, he stated to several persons that the property was worth $100,000 and that he would not consent to a sale at that price. He reiterates that statement in his testimony. From the record, it appears that from the year 1874 to 1881, the prices of sugar and molasses were steadily declining on the market, and that plantation property had not improved in the sugar section of the State. Hence, it is not correct to assert that under the lessee's management the property had depreciated in its intrinsic value.

But these considerations leave open the question of plaintiff's right of recovery for the value of his improvements under the terms of his lease.

The first objection in order is the effect of his settlement of accounts with defendant in 1879. It is contended that, having made a settlement with his lessor without including or even referring to his claim for improvements, the lessee in this case must be presumed to have then considered that he had no such claim; or otherwise, that he had abandoned or waived the same.

In this connection, the record shows that the relations between the parties were closer than usual between lessor and lessee. The lessor had reserved the right of general supervision over the plantation; and he exercised that right with great watchfulness, but with commendable indulgence and even with benevolent friendship for his lessee. As he had unlimited credit and considerable available means, he frequently endorsed his lessee's paper, and at other times advanced him money for immediate and unforeseen wants during the cultivation of the crops. At their annual settlement, if the lessee's means were short the lessor would remain the lessee's creditor for part of the rent, and sometimes on account of advances and endorsements. Hence, it appears that the settlement of January 20, 1879, included a pre-existing note of $12,-049 80, another similar note of $1505 13, several instalments of the

rent of the year 1878, and some advances of money.   Of course no mention was, or could reasonably have been, made of a claim which, under the terms of the contract, could have no existence before the expiration of the lease, which had yet two years to run.   The lessee had no more right to then claim compensation for his improvements than the lessor could at that time have insisted upon the seed cane necessary to plant 150 acres, or payment for the rent of the years 1879 and 1880.   These were also important stipulations in the contract of lease, but the performance of neither could be exacted in advance of the terms of the contract.

That settlement cannot, therefore, operate as an estoppel against plaintiff's present demand, and hence it is no bar to his right of recovery for the value of his improvements.

1. We shall now consider the claim in so far as it covers the improvements, other than machinery and fixtures, put on the property by the lessee.   A reference to the detailed statement attached to this petition shows that this class of improvements consists mainly of the rebuilding of the sugar-house, which was increased in size, of a bone black house, and of a syrup room, together with necessary attachments and appurtenances.   It also embraces repairs to the draining machine and to several other buildings on the plantation.

The record shows that those improvements were for the greater part of brick and cement, and that they were not additions in the legal sense of the term.   Hence, the right to recover on account of those improvements, which are properly speaking repairs, must be tested under the provisions of Article 2694 of our Code, which provides that if the lessor refuses or neglects to make the necessary repairs, the lessee may cause them to be made and deduct the price from the rent due, on proving that the repairs were indispensable, etc.

From the preponderance of the evidence it appears that the reconstruction of the bone-black house, and of the sugar-house and syrup room, can safely be treated as necessary repairs, and that the sum of $22,000, which is claimed in compensation for the same, is reasonable.

In order to bring that branch of his case within the requirement of the law just referred to, plaintiff alleges that these repairs and alterations, shown as herein before stated to be actually necessary, were made and erected with the express consent of the lessor, who agreed to pay for the same at the expiration of the lease.   These allegations are sworn to with great precision by plaintiff in his testimony, but are denied with perhaps greater emphasis by the defendant, who swears that

the repairs were not necessary, and that they were made by plaintiff at his whim and caprice, to suit his own taste or convenience, and that they imposed no obligation to pay for the same on the lessor.  It is true that the denial of the defendant is not actually borne out by the record. It is shown, and he admits, that he furnished some of the bricks and lime and other materials used in the reconstruction of the sugar-house and bone-black house.  Hence he must have consented to such repairs, reconstructions and alterations.  But on the crucial test involving his agreement to pay for those improvements, the evidence is not satisfactory.  On that point plaintiff has only succeeded to make his case probable, but he has not established his allegations with legal certainty.

We shall, therefore, reject that part of his claim, but in our decree we shall reserve his rights to make proper demand, as in case of nonsuit.

2. His right to recover the value of the machinery and fixtures, as contradistinguished from other improvements and repairs, hinges upon the construction of his agreement in the contract of renewal, to leave on the plantation all machinery and fixtures put on the property by him during the existence of his lease.  Defendant's contention is that this agreement was part of the consideration of the price of the lease, and in consideration of the very low price of the rent.

It is elementary in jurisprudence that stipulations in a contract must be construed with reference to the laws which govern the main contract and the subject matter embraced therein.  Hence the parties must be presumed to have contracted with full knowledge of, and with special reference to, our laws treating of, and providing for, the contract of lease which is such an important feature in the relations and in the daily commerce of life.

In the first contract, no reference whatever had been made to the subject of improvements and repairs.  The sole reference to the condition of the leased premises, was the one concerning the obligation on the part of the lessee to keep the property in the same condition in which he received it, ordinary wear and tear excepted, and to return the same quantity of agricultural implements and working animals.

The record shows that during the first two years the lessee had found it necessary to make great improvements and extensive repairs on the plantation, and when the parties proceeded to renew the lease for a term of five years, their attention was by their past experience, drawn to the question of improvements.  They were both aware of the provisions of article 2726, Civil Code, which confers the right on the lessee

" to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it."

The defendant therefore knew that unless otherwise provided for, his lessee could and doubtless would remove many pieces of valuable machinery which he had already placed, and others which he contemplated to put, on the plantation and which would become indispensable to a proper and profitable cultivation of the place. Hence he thought it well and prudent to guard against such an emergency—and with his lessee's consent, he stipulated and secured the right of retaining such improvements at the termination of the lease. These were improvements which the lessor had not the option to retain by paying for them as in the case with additions made with brick and cement. They were improvements which the lessee had the legal right to remove at the end of his lease, in the absence of stipulation to the contrary.

We are asked to decide with the district judge that the lessee thus bound himself to leave machinery and fixtures which, under the law, were his lawful property, without any compensation for the same. We cannot assent to such a proposition. What legal right did the lessee waive by his consent to that stipulation? The Code answers that he waived the right of removing his machinery and fixtures to be found as attached by him to the leased plantation. Evidently he did not in terms waive his right of ownership of the same during the lease—and manifestly such a waiver was not expected of him by the lessor. Had such been the intention of the parties, words to convey that meaning would have been used. In that case the stipulation would have been composed in terms like the following: " all machinery and fixtures put on the property by the lessee, *to become the property of the lessor*, and to remain thereon at the expiration of the lease "—or in this way: " all machinery and fixtures, etc., to remain thereon *free of charge to the lessor*." But it is too obvious for argument that courts will not add words to a contract for the purpose of ascertaining the true intent of the parties.

We hold that this stipulation, read in connection with the original contract and in the light of the textual provisions of our Code, is not even ambiguous, and that its plain meaning was simply to debar the lessee of the right of removing his machinery and fixtures put on the leased premises by him, at the expiration of his lease. Beyond that, the law determines his rights, which are a reasonable compensation for property which he thus transfers to his lessor, but which the law does not presume that he intended to give.

The intent of the parties is to be determined by the words of the contract which are to be understood like those of a law, when they are clear and explicit and lead to no absurd consequence. C. C. 1945, 1946.

To construe this stipulation as meaning that the machinery and fixtures put on the property by the lessee were to remain thereon *free of charge to the lessor*, would lead to the conclusion, absurd in our opinion, that the lessee, a man of limited means, would have contracted to pay an annual rental of $6000, and pay the taxes shown to average $1000 a year, on a plantation not exceeding $50,000 in value, and to leave on the property, as an additional consideration, machinery and fixtures shown to have cost him more than $20,000. Had he thus bound himself in clear terms, the courts could give him no relief, but we are as powerless to construe him into an obligation which he did not undertake, and to which the terms of his contract did not bind him.

We note defendant's argument that the agreement by the lessee to transfer, free of charge, to the lessor, his valuable machinery and fixtures, had a valid consideration in the low figure of the rental. If such was the case it should have been so stated in the act. But in point of fact, the price of the rent was neither low nor disproportionate to the value of the thing let. A rental of $6000 and the indemnity from taxes amounting to $1000 a year, on a plantation avowedly worth but $50,000 is a very handsome compensation— it represents an annual net income of twelve per cent on an investment of $50,000.

The foregoing considerations are in perfect harmony with our established jurisprudence.

In the case of Miller vs. Michoud, 11 Rob. 225, the lessee had bound himself to leave his improvements *without claiming compensation therefor*, and the court properly held him to that feature of his contract. A similar stipulation was enforced in the case of Talley vs. Allexander, 10 Ann. 627. A like agreement was found in the case of Larquier vs. White, 29 Ann. 157—and the lessee was denied the right of recovery for the value of a boiler which he had attached to a leased sugar-house.

In recognition of the principle which we have herein announced the Court said in that case: " Under the law, and without a stipulation to the contrary, defendant (the lessee) would have been entitled to either the boilers or their value; under the contract he is not." D'Armand vs. Pullin, 16 Ann. 243; Pecoul vs. Augé, 18 Ann. 614.

In the latter case the Court held that the lessee had the absolute right to remove his improvements; that he was not obliged to take their equivalent in money, and that the lessor was not bound to keep

and pay for them, but that if he elected to keep, he was bound to pay for, them.

In our case the lessee had agreed to leave, and the lessor had by his subsequent acts agreed to keep, the machinery and fixtures in question. We must hold that, without a stipulation to the contrary, he is bound in law to pay for them.

In the case of Penn vs. Citizens' Bank, 32 Ann. 195, the Court recognized in the lessee the right to claim a boiler which he had attached to the leased premises, and as it appeared that the lessor had elected to keep the boiler, the cause was remanded for the purpose of ascertaining the value and cost of the boiler. 32 Ann. 371, in the matter of the Morgan R. R. Co. praying, etc.

For the reasons given on the plea of estoppel, the plea of prescription is untenable and is therefore overruled. The claim became due on December the 31st, 1880, and the action to enforce it was brought on January 3, 1881.

Having thus reached the conclusion to hold the defendant liable for the payment of the machinery and fixtures in question, we have nothing left but the task of ascertaining what items charged in his statement of improvements, annexed to his petition, properly fall within that category, and the value of the same.

Under our interpretation of the contract and of the agreement touching these articles, the parties should be governed as to the value of the same by the provisions of article 508 of our Code, and hence the lessor who has elected to keep those improvements is only bound for the cost of the materials and the price of workmanship, and not for the enhanced value of the property. 33 Ann. 188, Graf vs. Friedlander; Kibbs vs. Campbell, 34 Ann. 1163; 32 Ann. 203.

The cost of these improvements is shown by the testimony of plaintiff, corroborated by that of other witnesses with whom he dealt or whom he employed, and is supported by receipts and other vouchers duly proven as genuine.

We note in this connection defendant's reiterated complaint that those statements show that he is charged with the costs of farming implements of a perishable character, with lime and bone-black and other articles consumed by use. Such articles do figure in the bill which plaintiff procured from his dealers; but they form no part of the prices charged in the statement of the cost of the machinery and fixtures for which he claims and we allow compensation.

After a thorough examination of the account we have allowed compensation as claimed on the following items of machinery and fixtures :

Ross vs. Zuntz

| | |
|---|---|
| Five filters, | $ 200 |
| Nine filters lengthened, etc., | 630 |
| Bone-black furnace, freight, etc., | 500 |
| Seven juice tanks, | 750 |
| Freight, etc., thereon, | 150 |
| Bone-black elevator, | 350 |
| Bone-black chimney, | 750 |
| One pair centrifugals, | 500 |
| Foundation for same, etc., | 750 |
| Sixteen iron coolers, | 480 |
| Two water tanks for centrifugals, | 40 |
| Freight thereon, | 10 |
| Two blow-tips, | 300 |
| Two Blake pumps for blow-tips, | 500 |
| One Globe vacuum pan, | 3800 |
| Freight thereon, putting up, etc., | 625 |
| One vacuum pump, | 2200 |
| Connections thereof, freight, etc., | 300 |
| One Cameron pump, etc., | 1200 |
| Freight thereon, connections, etc., | 300 |
| One bagasse carrier, frame casting, etc., | 1000 |
| Five Blake pumps, | 1250 |
| Freight, connections, etc., | 250 |
| One settling tank, etc., | 300 |
| Freight, etc., | 25 |
| Tubes, etc., to Rillieux apparatus, | 1000 |
| One double boiler, freight, etc., | 1200 |
| Railroad ties, | 20 |
| Pipes and laying from river to sugar-house, etc., | 1000 |
| Labor for building new stable, | 250 |
| Putting up wire fence, | 480 |
| Total amount allowed, | $21,110 |

The allowance for railroad ties, for labor in building new stables, erected by the lessor himself, and the labor for a wire fence, results from proof of agreement between the parties. These improvements were made by the lessor, and the amounts charged are for labor furnished by the lessee.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed. It is now ordered and decreed that plaintiff, Jesse W. Ross, do have and recover judg-

ment of the defendant, James E. Zuntz, in the sum of twenty-one thousand one hundred and ten dollars, with privilege on the property herein described, and for costs in both courts. And that his claim for the balance of his account sued on and annexed to his petition be rejected and his action thereon dismissed as in case of non-suit.

Rehearing refused.