165 So. 638

**UNION TANK CAR CO. v. LOUISIANA OIL REFINING CORPORATION.**

No. 33652.

Jan. 6, 1936.

Rehearing Denied Feb. 3, 1936.

Robert Roberts, Jr., and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellant.

Eugene J. McGivney, of New Orleans, Arthur E. Bristol, of Chicago, Ill., and Barksdale, Bullock, Warren, Clark & Van-Hook, of Shreveport, for appellee.

FOURNET, Justice.

On the 10th day of January, 1927, the plaintiff, Union Tank Car Company, purchased from the defendant all of its tank cars for the sum of $1,025,000, and on the same day it entered into a contract to rent cars to the defendant for the purpose of transporting its products to the market. In order to properly service the cars rented to and used by the defendant, it became necessary for plaintiff to provide car shops with the necessary equipment and trackage, and for that purpose, on the 20th of June, 1927, leased from defendant a tract of land near its refinery situated in Bossier parish, for a rental consideration of $200 a year.

In the contract of lease there is a provision to the effect that the buildings, trackage, machinery, and tools constructed and placed on the premises by plaintiff, regardless of whether or not the same might become a part of the realty, should remain the

property of the lessee (plaintiff) during the term of the lease, and it should have the right to remove the whole or any part thereof during the lease or at any time within six months after the termination thereof. It was further agreed that if the lessee elected, at the expiration of the lease, not to remove such buildings, trackage, machinery, and tools (except hand tools, etc., which should be removed at once), then the lessee (plaintiff) should be entitled to reimbursement therefor by the lessor (defendant) *"for an amount equal to the value, obsolescence and depreciation both considered,"* at the date of the termination of the lease.

The term of the lease was for an indefinite period subject to cancellation after five years upon six months' notice by either party. On July 30, 1931, the defendant notified plaintiff that it intended to exercise its option to cancel the lease after the expiration of five years; whereupon plaintiff notified the defendant that it elected not to remove the car shops, trackage, and other improvements it had installed on the premises, and made demand on the defendant for the sum of $43,795 as reimbursement therefor. The defendant refused to pay and the plaintiff filed this suit.

Exceptions of no cause or right of action were filed by the defendant and maintained by the lower court, but on appeal to this court, the judgment was reversed and the case remanded for further proceedings according to law. Union Tank Car Co. v. Louisiana Oil Refining Corporation, 178 La. 940, 152 So. 571. The defendant then filed an answer admitting the execution of the lease but denied liability thereunder, and on the trial of the case on the merits, the judge of the lower court rendered judgment in favor of the plaintiff for the sum of $29,743.12, with 5 per cent. per annum interest thereon from June 24, 1932. The defendant appealed, and the plaintiff answered the appeal asking that the judgment be increased to the amount prayed for.

The sole question presented is the amount that the plaintiff is entitled to recover for the *value* of the car shops, tracks, and machinery left upon the premises according to the terms of the contract of lease. The pertinent part of the lease reads as follows:

" * * * the party of the second part (plaintiff) shall be entitled to reimbursement by the party of the first part (defendant) *for an amount equal to the value, obsolescence and depreciation both considered,* at the date of such termination of this lease of such buildings and of improvements thereto and/or any and all trackage, machinery, tools, and other property whatsoever. * * * "  (Italics ours.)

Under the heading of "Interpretation of Agreements" of the Revised Civil Code, article 1945 provides:

"Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:

"First * * *

"Second—That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;

"Third—That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences."

On the same subject-matter, we find in Corpus Juris, vol. 13, at page 520, § 481, the following:

"The law furnishes certain rules for the construction of written contracts for the purpose of ascertaining from the language the manner and extent to which the parties intended to be bound which should be applied with consistency and uniformity. Rules of construction, however, are not inflexible, their purpose being to reach the probable intent of the parties * * *.

*"Further a court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language, but will enforce the contract according to its terms."* (Italics ours.)

██ We must, therefore, determine the intent of the parties to the contract according to its terms if the language used is clear and unambiguous.

Bouvier, in his law dictionary, defines "value" as follows:

"Value. The utility of an object. The worth of an object in purchasing other goods. The first may be called value in use; the latter value in exchange.

"When applied without qualification to property of any description, necessarily means the price which it will command in the market."

"Value" is defined in Webster's New International Dictionary as:

"The property or aggregate properties of a thing by which it is rendered useful or desirable, or the degree of such property or sum of properties; worth; excellence; utility; importance."

In Corpus Juris, vol. 66, p. 418, it is stated:

"It has long been recognized that 'value' may be used in different senses. That the true meaning of a word is to be determined by its context is peculiarly true of 'value.' *The primary meaning of 'value' is worth.* In general, 'value' has two different meanings; it sometimes expresses the utility of an object, and sometimes the power of purchasing other goods with it; the one may be called 'value in use,' the other 'value in exchange.'" (Italics ours.)

The value of property is measured by the use that may be made of it or the price for which it might be sold.

In order to give the proper construction to the clause "value, obsolescence and depreciation both considered," we must now consider the effect of the phrase, "obsolescence and depreciation both considered," modifying the word "value" as used in the contract.

The word "depreciation" is defined by Webster's New International Dictionary as:

"An act of depreciating"; and "depreciate" as: *"To lessen in price or estimated value."* (Italics ours.)

And Webster's International Dictionary defines it as:

"To become depreciated; *to fall in value or esteem; to lessen in price or estimated value; to lower the worth of."* (Italics ours.)

It is obvious from these definitions that "depreciation" in its ordinary sense means a fall or decline in worth from any cause and that *includes physical deterioration* which is brought about by time, weather, and ordinary wear and tear.

On this subject-matter plaintiff's witness Werner brought into court an accountant's handbook, from which and under the heading "Outline of Causes of Depreciation," we quote the following:

"The principle causes of depreciation can be listed as follows:

"1. Ordinary 'wear and tear' in use.

"2. Unusual damage or deterioration.

"3. Exhaustion.

"4. *Limited possibility of use.*

"5. Inadequacy.

"6. *Obsolescence.*

"7. Cessation of demand for product."

And the same author treats "obsolescence" as of two types:

" *  *  * (1) that representing 'normal loss in value due to normal progress in the industry, inadequacy, change in demand, in product, or in location, or some similar cause'; and (2) that representing *'unexpected and unforseen loss in value due* to invention, *sudden and unforseen cessation of demand, or any other cause which is a mere contingency.'  *  *  *"* (Italics ours.)

"Obsolescence" is defined by Webster's International Dictionary as "state of becoming obsolete"; and "obsolete" as *"no longer in use; disused; neglected."*

In the case of United States Cartridge Company v. United States, 284 U.S. 511, 52 S.Ct. 243, 76 L.Ed. 431, the Supreme Court of the United States said:

" 'Obsolescence' may arise from changes in art, shifting of business centers, loss of trade, inadequacy, supersession, prohibitory laws, and other things which, apart from physical deterioration, operate to cause plant elements or· the plant as a whole to suffer diminution in value. Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 654, 51 S.Ct. 262, 75 L.Ed. 594, 597; V. Loewers Gambrinus Brewery Co. v. Anderson, 282 U.S. 638, 51 S.Ct. 260, 75 L.Ed. 588."

In the case of McAnarney v. Newark Fire Insurance Co., 247 N.Y. 176, 159 N.E. 902, 905, 56 A.L.R. 1149, the court had before it a policy containing a clause wherein the proper deductions for depreciation of the cost of reproduction had to be considered, and it said:

" 'The word (depreciation) means, by derivation and common usage, a "fall in value; reduction of worth." ' N. Y. Life Ins. Co. v. Anderson (C.C.A.) 263 F. [527] at page 529. It includes obsolescence. Nashville, C. & St. L. R. Co. v. U. S. (C.C.A.) 269 F. 351, at page 355; San Francisco & P. S. S. Co. v. Scott (D.C.) 253 F. [854] 855. *An obsolete thing is a thing no longer in use.*" (Italics ours.)

And the court stated·further:

*"In determining the extent to which these buildings had suffered from depreciation, the trier of fact should have been permitted to consider that,* owing to the passage of the National Prohibition Act,. *they were no*

*longer useful for the purposes to serve which they were erected. It should have been permitted to consider their adaptability or inadaptability* to other commercial purposes. The law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and well-being of their owner. *In the instance of the former it judges their value by the market price.* In the instance of the latter it measures their loss, not by their value in a second-hand market, but by the value of their use to the owner who suffers from their deprivation. \* \* \* However that may be, it is a self-evident proposition that factory buildings peculiarly adapted to the manufacture of malt must have depreciated in value when malt may no longer be manufactured; that buildings useful only for factory purposes have lost value when they are no longer used or usable for such purposes." (Italics ours.)

In the case at bar plaintiff contends that it is entitled to recover under the terms of the clause in question the original cost of the improvements left on the defendant's premises, less obsolescence and depreciation, to be based on the actual physical deterioration thereof, and relies on article 2726 of the Revised Civil Code and the case of Ross v. Zuntz, 36 La.Ann. 888, in support thereof, and on the trial of the case offered testimony accordingly tending to show the physical value of the same to be worth $39,491. It also offered further testimony to show that the reproduction cost, less actual physical deterioration, in the event the court might conclude that the measure of damages should be reproduction cost less depreciation instead of actual cost less de-

preciation, amounting to $33,800. On the other hand, it is defendant's contention that plaintiff is entitled to recover only the value of the property to be determined according to its actual worth at the termination of the lease and introduced evidence to show that the property, *due to its obsolescence and uselessness,* had so depreciated in value that $2,200 was a fair price for the same.

The trial court, in construing the clause in question said: "We think they meant the ordinary every day obsolescence and depreciation. Depreciation brought about by time, weather and wear and tear. Obsolescence as brought about by change in craft or methods."

There is no ambiguity in the contract, and when there is none, "the contract is the law of the parties." Larguier v. White, 29 La.Ann. 156, 158. "It is not the province of the court \* \* \* to change the terms of a contract which has been entered into, even though it may be a harsh and an unreasonable one. Nor will the dictates of equity be followed if by so doing the terms of a contract are ignored, for the folly or wisdom of a contract is not for the court to pass upon. Its terms, however onerous they may be, must be enforced if such is the clear meaning of the language used, and the intention of the parties using that language." 13 C.J. 541, § 513. See, also, Ruling Case Law, vol. 6, §§ 231, 232, pp. 841, 842.

In the case of Ross v. Zuntz, supra, the lessee had agreed in the contract of lease that all the machinery and fixtures put on the property by him were to remain thereon at the expiration of the lease without

any stipulation having been made therein for any reimbursement therefor. The court held that he had not thereby waived his right, under the provisions of article 2726 of the Revised Civil Code, to claim compensation for the same and hold further that the parties were presumed to have dealt with each other with knowledge of the existence of the law in force at the time. The court found as a fact from a preponderance of the evidence that the reconstruction of certain property and improvements on the premises were necessary repairs and gave judgment therefor under article 2694 of our Revised Civil Code but nonsuited him on other items. In the case at bar the contract provides for the extent to which the parties intended to be bound and, therefore, the case of Ross v. Zuntz is not applicable.

From a review of the record it is obvious that the contract of lease in question was entered into for the sole purpose of enabling and facilitating plaintiff to carry out its contract with the defendant, whereby it had leased its tank cars for defendant's use and for which it received remuneration in the sum of $600,000 from the defendant and over $400,000 from railroad companies, aggregating a total amount of more than $1,000,000. Moreover, the clause in question was written into the contract for the benefit of the plaintiff, for if the stipulation had not been written into the lease, plaintiff (lessee) would have had the right to remove its improvements from the premises of defendant (lessor), provided the property was left in the same state in which it was when leased. And although defendant might have retained improve-

ments and additions which were made with lime and cement upon payment of a fair price therefor (article 2726, Rev. Civ. Code), nevertheless the defendant could not have been compelled to take the same. In re Morgan R. & S. S. Co., 32 La.Ann. 371.

We cannot imagine upon what theory the defendant would have agreed to reimburse the plaintiff for the property in question based on cost less a deduction for physical deterioration only, particularly in view of the clear and definite words used in the controversial clause. Plaintiff's contention is without merit.

The next question is: What amount is plaintiff entitled to recover? Mr. Smith, plaintiff's vice president, testified that the improvements and equipment left on the plaintiff's premises under their said contract are a liability to the plaintiff; that it would actually cost more to dismantle and load the materials for shipment to their Birmingham shops than it is actually worth. On the other hand, they are equally of no value to the defendant because it has no cars to repair and the service performed by plaintiff for defendant is now being rendered by another company at a more advantageous price. It is conceded by both the plaintiff and the defendant that the improvements where and as situated can be of no use to any one and, consequently, cannot possibly have a market value.

We are, therefore, of the opinion that plaintiff is entitled to recover from the defendant the value of the car shops, trackage, and machinery left on defendant's

premises in an amount equal to the value thereof, obsolescence and depreciation both considered at the date of the termination of the lease, based on its worth, that is, cash value, which, according to the uncontradicted evidence, is the sum of $2,200.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment of the lower court be and it is hereby amended so, as to reduce the principal amount thereof from $29,743.12 to $2,200, with 5 per cent. per annum interest thereon from June 24, 1932, until paid; costs of the lower court to be paid by the defendant and all costs of this appeal to be paid by plaintiff.

ODOM, J., dissents.