BARNETTE, Judge pro tem.
This case is before us on appeal by Congress International, Inc., from a judgment of the Civil District Court for the Parish of Orleans, rejecting its intervention and claim of ownership of certain motel furniture, rescinding and recalling a temporary restraining order, and rejecting its application for a preliminary writ of injunction. The real issue in the case is whether Congress International, Inc., is the owner of the furniture in question. The right to the in-junctive relief prayed for is wholly dependent on an affirmative answer to that question.
On May 16, 1962, William B. Eller of New Orleans entered into a contract of lease with Congress New Orleans East, Inc., a Florida corporation, for the rental of a motel to be constructed on Chef Menteur Highway in New Orleans, to be operated as a “Congress Motel”. The term of the lease was fixed at twenty years at an annual rental of $115,000.00 for the first year and $125,000.00 for each year thereafter, payable monthly in advance. The rentals were to commence after completion of the construction of the motel, which was to begin after the lessor exercised its option to purchase certain property upon which the motel was to be built according to certain specifications.
The lease contract recited the understanding that Eller, lessee, was a party interposed and that he would assign the lease to a corporation to be organized under Louisiana law composed of himself, Fred Jellin, William E. Carter, and Andrew J. Pincon. Accordingly said parties did organize Saturn Motor Hotel Corporation, hereinafter referred to as Saturn, to which the lease was assigned by Eller on June 1, 1962.
On April 2, 1963, Congress New Orleans East, Inc., transferred all its assets to Congress International, Inc., also a Florida corporation, which then became the lessor. On June 24, 1963, the original lease was amended by Congress International, Inc., and Saturn to fix the commencement date of the lease to be June 24, 1963, and to increase the rental $3,100.00 per year, on account of certain additions and changes in the building specifications.
During the little more than thirteen months from the execution of the original lease contract May 16, 1962, and the commencement of the lease June 24, 1963 (the date the motel was ready for occupancy), several other contractural negotiations had taken place which we find unnecessary to discuss in view of the findings upon which this opinion is based.
Saturn purchased something over $200,-000.00 worth of furniture and equipment necessary to the operation of its motel and gave certain notes in payment thereof. One of the notes in the principal sum of $233,-587.00 given to The Maxwell Company, Inc., the seller of the furniture, and personally endorsed by the incorporators of Saturn, namely, William B. Eller, William E.Carter, Jr., Andrew J. Pincon, and Fred Jellin, was endorsed and discounted by The Maxwell Company, Inc., to American Acceptance Corporation, who became the holder in due course.
Saturn defaulted in payment of rentals due under the lease contract of May 16, 1962, as amended June 24, 1963, and was evicted on March 13, 1964, by the lessor, Congress International, Inc., who on that date took over the operation of the motel.
Saturn having paid only $10,000,00 on the aforesaid note, American Acceptance Corporation, the holder in due course, brought suit for the balance against Saturn and its endorsers, William B. Eller, William E. Carter, Jr., Andrew J. Pincon, and Fred Jellin. Judgment by default was granted against Saturn and Jellin.
*224 A writ of fieri facias was ordered for the seizure of the property of the judgment debtor, Saturn, whereupon Congress International, Inc., intervened claiming ownership of the furniture and equipment located in the “Congress Inn” on Chef Men-teur Highway. This is the motel formerly operated by Saturn as lessee and from which it was evicted as aforesaid. A temporary restraining order was issued restraining the sheriff from seizing the furniture in question. Upon hearing the rule for a preliminary injunction, judgment was granted in favor of American Acceptance Corporation, defendant in the rule and against Congress International, Inc., plaintiff in tlie rule, rescinding and recalling the temporary restraining order and rejecting the application for a preliminary writ of injunction. Judgment was granted American Acceptance Corporation, in reconvention, in the amount of $100.00 for attorney’s fees. Congress International, Inc., inter-venor, has appealed suspensively.
Intervenor’s claim of ownership of the furniture is based upon an alleged act of sale dated April 2, 1963, whereby Congress New Orleans East, Inc., a separate corporation, purported to “sell, grant, assign and convey” to Congress International, Inc., “all of its real property, personal property and ass-ets of every other kind and description owned by it, and wheresoever located; all as shown on the attached sheet known as Schedule ‘A’, attached hereto and made part hereof.” (Emphasis added.) Schedule “A” is as follows:
“LIST OF ASSETS SOLD BY CONGRESS NEW ORLEANS EAST, INC. TO CONGRESS INTERNATIONAL, INC. APRIL 2, 1963
ASSETS SOLD
Petty Cash Fund (in Custody of Richard Flink) $ 500.00
Land Costs 172,738.30
Construction in Progress — Motel 480,014.83
Option Fee For Land Adjoining New Orleans Motel 10,750.00
Interim- Financing Commitment Fee 6,750.00
$670,753.13
LESS LIABILITY ASSUMED
Construction Loans Payable — National Bank of Commerce 464,254.20
NET ASSETS SOLD $206,498.93
SCHEDULE A”
Much of the record before us relates to the disputed claim of Congress New Orleans East, Inc., of having acquired the ownership of the furniture in question from Saturn. As above stated, we find it unnecessary to decide that issue. Congress International, Inc., bases its claim of ownership on the alleged act of sale of April 2, 1962. That act is clear and free of all ambiguity. It clearly reveals the intention of the seller and the buyer to convey all of seller’s real and personal property and assets of every kind and description, “all as shown on the attached sheet known as Schedule ‘A’ * * *” which was made a part of the contract. The statement of intent in the body of the act to sell all of its property and assets must be read in connection with Sched *225 ule “A” which is captioned “LIST OF ASSETS SOLD BY CONGRESS NEW ORLEANS EAST, INC. TO CONGRESS INTERNATIONAL, INC. APRIL 2, 1963”. It should be noted that the total value of all the assets sold was $206,498.93. This was no more (if anything less) than the value of the furniture and fixtures alone. Evidently the contracting parties did not consider this furniture to be among the assets owned by Congress New Orleans East, Inc.
There is no claim of error and no testimony tending to show that the furniture was inadvertently omitted from Schedule “A”. Indeed it would be unreasonable to assume that an oversight of more than $200,000.00 of tangible assets would not evoke some explanation or attempt toward correction. The intent of the parties must be determined from the contract itself when it is clear, unequivocal and free from ambiguity. LSA-C.C. art. 194S; Texaco, Inc. v. Vermilion Parish School Board, 244 La. 408, 152 So.2d 541 (1963); Blevins v. Manufacturers Record Publishing Co., on rehearing, 235 La. 708, 105 So.2d 392 (1958); Succession of Jurisich, 224 La. 325, 69 So.2d 361 (1953); Union Tank Car Co. v. Louisiana Oil Refining Corp., 184 La. 121, 165 So. 638 (1936); Marcann Outdoor, Inc. v. Hargrove, 140 So.2d 815 (La.App.3rd Cir.1962).
Furthermore the “Amendment to Lease” dated June 24, 1963, above mentioned, contains the following clause:
“WHEREAS, by act of sale under private signature, Congress New Orleans East, Inc. did sell, assign, convey and transfer all of its right, title and interest of, in and to the real estate forming the subject matter of the lease agreement to CONGRESS [International] by private act dated May 28, 1963, which act is registered in COB 658, Folio 261, Orleans Parish, Louisiana, wherein and whereby Congress International, Inc. by its acquisition of the land became the lessor under the said lease agreement originally dated May 16, 1962; * * *”
Significantly there is no mention of acquisition of ownership of the furnishings and fixtures. The conveyance referred to preceded by five days the alleged transfer of April 2, 1963. It is hardly conceivable that both acts of sale and the reference to one of them in the June 24 amendment of lease would have omitted reference to the furniture and fixtures through oversight.
One other significant fact shows that Congress International, Inc., did not consider itself the owner of the furniture after April 2, 1962. Nathin Fishalow, assistant to the treasurer of Gulf American Land Corporation (the parent corporation of the Congress group), who in 1963 was comptroller of Congress International, Inc., testified that the furniture in question was not put or carried on the books of Congress International, Inc., nor depreciated, nor otherwise listed as an asset of the company until after March 13, 1964, the date when Saturn was evicted and Congress International, Inc., took possession of the motel.
Intervenor, Congress International, Inc., filed in evidence a letter from Gulf American Land Corporation addressed to William Eller and Andrew J. Pincon, dated March 12, 1964, which was the day before Saturn was evicted. This letter describes seven promissory notes held by Gulf American, signed by William Eller, Sue Eller, William Carter and Carol A. Carter, which for the recited consideration of $10.00 were cancelled and discharged in full. The lasü paragraph of the letter is as follows:
“The undersigned, William Eller and Andrew J. Pincon, hereby affirm that amoung [sic] the considerations for the execution of the lease of the property to William Eller, which lease was later assigned to Saturn Motor Hotel Corporation, was the undertaking by *226 Lessee to transfer the furniture and fixtures therein contained to Congress International, Inc.”
The letter is signed for Gulf American by-Solomon Sandler, vice president; “approved and agreed to” and signed by William Eller and Andrew J. Pincon.
Reference in the foregoing letter to transfer of the furniture and fixtures by the lessee to Congress International, Inc., is the only indication in the record that such a transfer was made.
There is no other evidence in the record indicating that Saturn ever transferred or sold any furniture to Congress International, Inc., and intervenor does not base its claim on such “transfer” but instead upon the alleged sale by Congress New Orleans East, Inc., to it of April 2, 1963. An affirmation of that which never existed is meaningless.
Obviously, this attempted affirmation was required as an afterthought in an attempt to bolster its baseless claim of ownership of the furniture. It was obtained from debtors in great financial distress who could have been induced at that time (March 12, 1964) to sign almost anything in the hope of salvaging something from their financial ruin. This is the substance of the testimony of Mr. Eller and Mr. Pincon, the latter testifying in part as follows:
“We came to agreement and the whole thing was about us peacefully leaving the premises and turning it over to Congress without any fight in return for the notes that were signed by Mr. Eller and by Mr. Carter, because it was our intention, and still do not desire to go bankrupt and first, these were notes personally signed and if there were some way we could get the notes back and effect the peaceful transfer, we would.
“The letter was signed in all sincerity. The only thing that we actually were interested in were the notes.
“The last paragraph didn’t even come to my attention until two to three months after it was signed, because when it was signed, there was only one thing uppermost in our minds and that was turning the premises over peacefully, not spending additional legal costs and going into Court and also not trying to hurt the Congress, which we had tried a long time to build and prosper, but it didn’t work out, but that was no reason to drive a stake into it and I personally had no knowledge of the last paragraph in there until some two months later, when we were sitting down with Mr. Mintz and going over everything and it was at that point we found the paragraph in there.”
Congress International, Inc., has failed to establish its ownership of the furniture and fixtures in question, and the judgment of the trial court is correct.
The judgment on the rule for a preliminary injunction which was granted in favor of American Acceptance Corporation, defendant in the rule, and against Congress International, Inc., plaintiff in the rule, rescinding and recalling the temporary restraining order and rejecting the application for a preliminary writ of injunction, and on the reconventional demand granting American Acceptance Corporation the amount of $100.00 for attorney’s fees is affirmed at appellant-intervenor’s cost.
Affirmed.