BOWES, Judge.
Plaintiff appeals from judgment of the trial court dismissing its demands for damages arising from an alleged breach of a lease between the parties to this suit.
Plaintiff and defendant entered into a lease on January 25, 1974 whereby defendant was to have the use of eight piling clusters on the west bank of the Mississippi River near Nine-Mile Point for the purpose of mooring barges. The lease reads in pertinent part as follows:
II
“BARGE agrees to furnish to RIVER FLEETS for its use in the fleeting of barges the presently existing piling clusters (8) as marked on “Exhibit A” and all other mooring aids presently located on the batture and adjacent to the leased premises.
III
“BARGE agrees to provide and furnish RIVER FLEETS an office consisting of one (1) room and toilet facilities for use by the fleet attendants employed by RIVER FLEETS. BARGE further agrees to prepare and furnish adequate roadway to RIVER FLEETS for access to the barges fleeted by it with a proper ramp set up therefor. BARGE further agrees to furnish four (4) additional dead men as kite anchors for use by RIVER FLEETS.
IV
“RIVER FLEETS accepts the aforesaid mooring facilities in their present condition and agrees to maintain them in the same order as received, normal decay, wear and tear excepted. All maintenance and repairs to the fleeting facilities, including but not limited to, the aforesaid pile clusters shall be at the expense of RIVER FLEETS and RIVER FLEETS agrees to properly carry out and complete such maintenance and repairs promptly after any damage occurs and to take whatever measures are necessary to maintain the safety of its fleet during such work. At the termination or cancellation of this lease RIVER FLEETS agrees to return at its expense the facilities in like good order as received, normal decay, wear and tear excepted.”
At the inception of the lease, on January 28, 1974, an independent and qualified marine surveyor, H.E. Breit, III, of Breit Engineering, Inc., found the leased clusters to be in satisfactory condition for the mooring of barges.
On January 12, 1977, shortly before the termination of the lease, which occurred on January 25, 1977, H.E. Breit, III was again employed to perform an independent survey of the leased clusters. At that time the surveyor found the leased clusters to be in satisfactory condition, normal wear and tear excepted, and we do not find any evidence in the record sufficient to overcome this or to prove that any of the leased clusters were damaged between January 12th and January 25, 1977, or at any time during the term of the lease.
Plaintiff claims that piling clusters 6 and 7 (part of those leased) and piling cluster 9 (not leased) were damaged some time during the term of the lease to the extent of $41,206.23 and further asked the court to award $16,200.00 for loss of rental due to defendant’s alleged breach of the lease. It is the contention of the plaintiff that Article IV of the lease brings the unleased but damaged cluster 9 within the scope of the lease. Plaintiff relies on the following wording to uphold his claim, “All maintenance and repairs to the fleeting facilities, included but not limited to the aforesaid pile clusters, shall be at the expense of River Fleets. ...”
It is well settled that the intent of the parties must be determined according to the clear and unambiguous terms within the four corners of the written instrument. Union Tank Car Co. v. Louisiana Oil Refining Corporation, 184 La. 121, 165 So. 638, (1936), and Muse v. Metropolitan Insurance *1178 Co., 191 So. 586, affirmed, 193 La. 605, 192 So. 72 (1939). Articles II and III of the lease detail the property which the plaintiff agreed to furnish defendant. The property included eight piling clusters, mooring aids, an office, toilet facilities, access roadway, ramp and four “dead men as kite anchors.” Since the lease specifically describes these other articles within the fleeting facilities in addition to the piling clusters, the only logical construction of this contract is that these articles only were the things referred to in Article IV outlining the duties of the defendant-lessee with respect to maintenance and repair, in addition to the pile clusters.
Also, because the defendant contracted to maintain and repair only that property which it leased (eight piling clusters, mooring aids, an office, etc.), any claim involving property outside the scope of the lease can only be brought against the defendant in tort. The plaintiff did not prove the elements of a tort action against the defendant in connection with damage to unleased cluster 9. Hence, the defendant cannot be held liable for any damage to this piling.
With respect to piling clusters 6 and 7, the plaintiff is entitled to exactly what was agreed to in the lease, which is as follows:
“. .. At the termination or cancellation of this lease RIVER FLEETS (the defendant) agrees to return at its expense the facilities in like good order as received, normal decay, wear and tear excepted.”
The learned trial judge in his reasons for judgment states:
“The evidence adduced by plaintiff, much of which was vague, self-serving and hearsay, did not establish with legal certainty [we interpret ‘legal certainty’ as used by the trial judge above to mean ‘by a preponderance of the evidence’, which is the requirement for proof to a legal certainty in civil matters] that the January 12, 1977 opinion of the marine surveyor was in error and that at the termination of the lease the clusters were damaged in excess of normal decay, wear and tear.
Because of the many imponderables and intangibles involved in marine matters, it is the custom of the trade to have on-charter and off-charter surveys made primarily to determine such issues as are involved in this case.
This court places weight on the marine surveyor's testimony and surveys sufficient to say that plaintiff has not proved that defendant is liable for damages under the lease agreement.”
We agree and take note of the extremely well settled law of this state that factual findings of the trial judge should not be disturbed by a reviewing court unless they are manifestly erroneous, which we do not find to be the case here.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.